```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

TIM D. WALLER,

      Plaintiff,

   vs.                                Civil Action 2:14-cv-2301
                                         Judge Graham
COMMISSIONER OF SOCIAL SECURITY,      Magistrate Judge King

      Defendant.

## REPORT AND RECOMMENDATION

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income for the period beginning October 9, 2012.  This matter is now before the Court on plaintiff's *Statement of Errors*, ECF 10, the Commissioner's *Memorandum in Opposition,* ECF 18, and plaintiff's *Reply*, ECF 19.

**Administrative Proceedings**

    Plaintiff was 39 years of age at the time of the administrative decision. *See PAGEID* 111. He has at least a high school education and is able to communicate in English. *PAGEID* 59. He has past relevant work as a customer complaint clerk, telephone solicitor, collection clerk, collection supervisor, and general laborer. *PAGEID* 58, 103-04.

    Plaintiff filed his applications for benefits on December 1, 2011, alleging that he has been disabled since April 29, 2010. The applications were denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law

judge.

An administrative hearing was held on February 26, 2013. Plaintiff, who was represented by a non-lawyer, appeared and testified, as did Timothy Shaner, who testified as a vocational expert. In a decision dated May 9, 2013, the administrative law judge found that plaintiff was disabled from April 29, 2010 through October 8, 2012 but that, beginning October 9, 2012, plaintiff's condition had improved to the extent that he was not disabled at any time from that date through the date of the administrative decision. *PAGEID* 50-67. That decision became the final decision of the Commissioner of Social Security when the Appeals Council denied review on September 24, 2014. *PAGEID* 30-32.

**Administrative Decision**

The administrative law judge found that, throughout the entire period of claimed disability, plaintiff's severe impairments consisted of panic disorder without agoraphobia, generalized anxiety disorder, depressive disorder, alcohol abuse, idiopathic small fiber sensory neuropathy, vitamin D deficiency, irritable bowel syndrome, and cervical degenerative disc disease. *PAGEID* 55, 60. These impairments, whether considered singly or in combination, neither met nor equaled a listed impairment. *PAGEID* 55, 60. The administrative law judge found that, during the closed period of disability, plaintiff had the following residual functional capacity ("RFC"):

> [F]rom April 29, 2010 through October 8, 2012, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) such that the claimant could lift and carry 10 pounds occasionally, sit for a total of 6 hours in an 8-hour workday, with normal breaks, stand and walk for a total of 2 hours in an 8-hour workday, with normal breaks, but for

2

> no more than 15 minutes at a time, and push and pull within those limitations, but only occasionally with the right arm and leg. He could occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds. The claimant could occasionally balance, stoop, kneel, crouch, and crawl. He should have avoided exposure to hazards, such as unprotected heights, dangerous machinery, and commercial driving. The claimant could perform simple, routine tasks, with no fast production, pace or stringent production quotas, with superficial interaction with others. In addition, he could not maintain attention, concentration, and appropriate persistence or pace for a full workday on a regular basis.

*PAGEID* 57.

Beginning on October 9, 2012, the administrative law judge found, plaintiff's medical condition had improved, *PAGEID* 62, thus resulting in an increase in his RFC:

> [B]eginning October 9, 2012, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) such that the claimant can lift and carry 10 pounds occasionally, sit for a total of 6 hours in an 8-hour workday, with normal breaks, stand and walk for a total of 2 hours in an 8-hour workday, with normal breaks, but for no more than 15 minutes at a time, and push and pull within those limitations, but only occasionally with the right arm and none with the right leg. He can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid exposure to hazards, such as unprotected heights, dangerous machinery, and commercial driving. The claimant can perform simple, routine tasks, with no fast production, pace or stringent production quotas, with superficial interaction with others.

*PAGEID* 62-63.

Thus, the administrative law judge found that plaintiff's RFC for the two periods was almost precisely the same; the only differences were that, for the period beginning October 9, 2012, plaintiff (1) could not push and pull with his right leg, but (2) had no limitation

in his ability to maintain attention, concentration, and appropriate persistence or pace for a full workday on a regular basis.

Relying on the testimony of the vocational expert, the administrative law judge found that the first RFC precluded all jobs in the national economy, PAGEID 59, but that the second RFC would permit a claimant with plaintiff's vocational profile to perform work that exists in significant numbers, including such representative sedentary, unskilled jobs as packager, inspector, and surveillance system monitor. *PAGEID* 104-05.[1]

**Standard**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court

---

[1] The vocational expert also testified that the second RFC would preclude the performance of plaintiff's past work. *PAGEID* 104.

must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff does not challenge the administrative law judge's findings relating to the closed period of disability.  However, plaintiff contends that, in finding that plaintiff's medical condition had improved by October 9, 2012, the administrative law judge failed to properly evaluate and weigh the medical opinion evidence, including the opinions of plaintiff's treating physician and of a consultative psychologist, and that the finding of the administrative law judge is not supported by substantial evidence.  *Statement of Errors*. This Court agrees.

**Discussion**[2]

Michelle L. Graham, M.D., is plaintiff's treating physician.  On November 18, 2011, Dr. Graham completed an assessment of plaintiff's physical capacity in which she stated, *inter alia*, that plaintiff's impairments had lasted for three (3) years, that his prognosis for marked improvement and for a return to work was "poor," that the cumulative effect of plaintiff's problems would not permit him to work, that plaintiff's pain and other symptoms constantly interfere

---

[2] The Court will discuss only that evidence necessary to the resolution of the issues presented in plaintiff's *Statement of Errors*.

with his attention and concentration, and that plaintiff is severely limited in his ability to deal with work stress. *PAGEID* 484.

On March 12, 2012, Margaret C. Smith, Ph.D., performed a consultative psychological evaluation of plaintiff at the request of the state agency.  According to Dr. Smith, plaintiff's prognosis is "guarded," his short-term memory appears to be reduced, his ability to remember and carry out instructions would be limited "to a borderline range of functioning," he would have problems "with focus and attention, as well as pace and persistence over prolonged periods of time," he would respond appropriately to coworkers and supervisors in a work setting, but "any significant workplace pressures may exacerbate psychiatric symptoms and cause mental breakdown at this time." *PAGEID*  566-67.

On October 9, 2012, Douglas Woo, M.D., performed a neurological examination of plaintiff upon referral from Dr. Graham, *see PAGEID* 610, for "[e]valuation of paresthesias and recommendations for further management." *PAGEID* 611. Dr. Woo diagnosed idiopathic small-fiber sensory neuropathy, vitamin D deficiency, and neuropathic pain. *PAGEID* 616. He recommended further diagnostic testing and follow-up. *PAGEID* 616-17. Although Dr. Woo's lengthy report, *see PAGEID* 611-17, addressed primarily his neurological findings, Dr. Woo also made the following findings as to plaintiff's mental status:

> Alert and attentive. Oriented to person, place, time, and reason for visit. Language fluent with intact repetition and comprehension. Immediate recall, working memory, and long-term memory intact. No neglect.

*PAGEID* 614.

The administrative law judge briefly summarized the opinions of Drs. Graham and Smith, *PAGEID* 58, and relied on those opinions in formulating the first RFC, *i.e.,* governing the period from April 29, 2010 through October 8, 2013. *Id*. However, the administrative law judge relied on Dr. Woo's October 9, 2012 neurological report to conclude that plaintiff's condition had improved. As it relates to plaintiff's mental status, the administrative law judge found as follows:

> Further, upon a review of the claimant's mental status during [Dr. Woo's] examination, he was evaluated as alert, attentive, and oriented to person, place, time, and reason for visit. The claimant exhibited language fluent with intact repetition and comprehension, immediate recall, an intact working and long-term memory, and no neglect. The record also indicates that the claimant is doing well emotionally. Previously, the claimant demonstrated difficulties with focus and attention, as well as persistence over prolonged periods. Therefore, the October 9, 2012 examination findings show that the claimant has clinically improved.

*PAGEID* 64. Although the administrative law judge did not expressly consider the differences between the opinions of Drs. Graham and Smith on the one hand, and that of Dr. Woo on the other, the administrative law judge apparently accorded greater weight to Dr. Woo's opinion:

> The other medical source statements were carefully considered. While they were given considerable weight with respect to the closed period, they were made before he improved mentally and physically and as such have little bearing on his functioning since he experienced objective improvement.

*PAGEID* 64-65.

An administrative law judge is required to evaluate every

medical opinion, regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every medical opinion is treated equally; the Commissioner's regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources (or examining sources); and (3) treating sources. As one-time examiners, Drs. Smith and Woo are properly classified as nontreating sources. *See* 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). Dr. Graham is a treating source, and the administrative law judge recognized her as such. *PAGEID* 58.

The Social Security Administration accords the greatest weight to the opinions of treating sources; if an administrative law judge does not give "controlling weight" to the medical opinion of a treating source, he must provide "good reasons" for discounting that opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). "However, this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (emphasis in original)). With regard to nontreating sources, "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined'" him. *Id.* (quoting 20

8

C.F.R. § 404.1527(d)(1)). *See also Smith*, 482 F.3d at 875. In determining how much weight to give the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of h[is] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

In finding a closed period of disability, the administrative law judge apparently accorded controlling weight to Dr. Graham's opinion (as well as to Dr. Smith's opinion). In considering the period beginning October 9, 2012, however, the administrative law judge clearly did not. Yet, in according greater weight to Dr. Woo's passing assessment of plaintiff's mental status, the administrative law judge simply concluded, without any discussion, that Dr. Woo's neurological evaluation demonstrated that plaintiff's mental impairments had improved. *See* PAGEID 64-65.

The opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the administrative law judge finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent

of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §§ 404.1527(d)(2),(4), 416.927(d)(2), (4). Finally, the Commissioner must provide "good reasons" for discounting the opinion of a treating source, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

This Court concludes that, in considering the period beginning October 9, 2012, the administrative law judge failed to properly evaluate the medical source opinions. In the months prior to that date, plaintiff's treating physician and the consultative psychologist both opined that plaintiff's problems with attention, concentration, persistence and pace precluded work. Yet, in finding that plaintiff's problems in these areas were no longer work preclusive, the

10

administrative law judge relied exclusively and in conclusory fashion on the opinion of a consultative neurologist who examined plaintiff only for an "[e]valuation of paresthesias and recommendations for further management." *See PAGEID* 611.  The administrative law judge did not apparently consider the appropriate factors for discounting the opinion of a treating provider, *see Wilson*, 378 F.3d at 544, nor did the administrative law judge apparently consider the appropriate factors for evaluating the opinions of examining sources, *see Ealy*, 594 F.3d at 514 (an administrative law judge should consider such factors as "the evidence that the physician offered in support of h[is] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty."). In short, the administrative law judge failed to properly evaluate the medical source opinions for the period beginning October 9, 2012.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that this action be remanded for further consideration of the medical source opinions for the period beginning October 9, 2012.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy

thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


July 7, 2015                           *s/Norah McCann King*
                                        Norah M<sup>c</sup>Cann King
                                      United States Magistrate Judge